UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>                    Plaintiff,<br><br>          v.<br><br>JAMES A. SHEPHERD and JAMES A. SHEPHERD INC.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 13-cv-00370-FDW-DSC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FINAL JUDGMENT AND CONSENT ORDER OF PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST JAMES A. SHEPHERD AND JAMES A. SHEPHERD, INC.

### I. INTRODUCTION

On June 17, 2013, Plaintiff U.S. Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants James A. Shepherd ("Shepherd") and James A. Shepherd Inc. ("JAS Inc.") (collectively, "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violating Sections 4c(b), 4o(1)(A) and (B), and 9(a)(4) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6c(b), 6o(1)(A) and (B), and 13(a)(4) (Supp. IV 2011), and Sections 4.20(c) and 33.10 of the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 4.20(c) and 33.10 (2012).

### II. CONSENTS AND AGREEMENTS

To effect settlement of the allegations in the Complaint against them, without a trial on the merits or any further judicial proceedings, Defendants Shepherd and JAS Inc.:

1. Consent to the entry of this Final Judgment And Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendants ("Consent Order");

2. Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledge service of the Summons and Complaint;

4. Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5. Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6. Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e);

7. Waive:

    (a) any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2011), relating to, or arising from, this action;

    (b) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-

28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

    (c)    any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

    (d)    any and all rights of appeal from this action;

8.    Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendants now or in the future reside outside the jurisdiction of this Court;

9.    Agree they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10.    Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Facts or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendants shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

3

11.    Admit to all of the findings made in this Consent Order and all of the allegations in the Complaint. Further, Defendants agree and intend that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against either Defendant; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2011); and/or (c) any proceeding to enforce the terms of this Consent Order;

12.    Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by Paragraph 90 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

13.    Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against them in any other proceeding.

### III.    FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact and Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES HEREBY AGREE AND THE COURT HEREBY FINDS:**

A. **FINDINGS OF FACT**

**The Parties to This Consent Order**

14.     Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*

15.     Defendant **James A. Shepherd** is an individual who formerly resided in Vass, North Carolina.  Shepherd was previously registered with the Commission as an associated person ("AP") of JAS Inc.  Shepherd is the President, owner and sole principal of JAS Inc.

16.     Defendant **James A. Shepherd Inc.** is a corporation organized under the laws of the State of Delaware with a principal place of business in Southern Pines, North Carolina. Throughout the Relevant Period, defined in paragraph 23 below, JAS Inc. was registered with the Commission as a Commodity Pool Operator ("CPO") and Commodity Trading Advisor ("CTA") and was a member of the National Futures Association ("NFA").

**Background**

17.     As set forth more fully in the Complaint, Shepherd registered JAS Inc. as a CPO with the Commission in 2005 and registered himself as an AP of JAS Inc. since 1990.

18.     Shepherd formed Shepherd Major Play Option Fund LP ("the Pool") in or around April 2005 for the purpose of trading commodity options, with JAS Inc. acting as the Pool's CPO.

**Defendants Fraudulently Solicited, Commingled and Misappropriated Pool Participants' Funds**

19.     Beginning in or about September 2005, Defendants solicited prospective Pool Participants to invest in the Pool, which would use Pool Participants' funds to trade, among other things, options on commodity futures contracts.

20.     As part of this solicitation, Defendants provided prospective Pool Participants with a Confidential Private Offering Memorandum and Disclosure Document ("Offering Memo") via an internet website link which stated that the Pool would invest in, among other things, "commodities, commodity futures [and] options on commodities and commodity futures," and further that the Pool's funds would be segregated in that "[a]ssets of the Partnership will not be commingled with assets of any other entity."

21.     Later versions of the Offering Memo falsely represented the purported net asset value ("NAV") of the Pool. For example, an Offering Memo dated October 15, 2007 stated that the Pool's NAV as of July 31, 2007 was $3,255,957; however, as of that date, the Pool's true NAV was only approximately $1,232,049.

22.     Pool Participants deposited funds into a bank account in the Pool's name that was opened by Shepherd and for which Shepherd was the sole signatory.

23.     Beginning in April 2006 through June 2013 ("Relevant Period"), instead of maintaining the Pool's assets in the Pool's bank and trading accounts, Defendants misappropriated and commingled at least $4.45 million of the Pool's funds by, among other things, transferring Pool Participants' funds to:

      a.     Shepherd's own bank account, for his own personal use and to repay business obligations unrelated to the Pool;

      b.     futures and options trading accounts maintained in Shepherd's own name, which suffered significant trading losses; and

      c.     a bank account in the name of a separate hedge fund operated by Shepherd which Shepherd used to pay redemptions to those hedge fund investors.

24.     Defendants knew that their representations about the NAV in the Offering Memos were fraudulent when they were made.

**The Pool's Trading Activity**

25.     During the Relevant Period, Defendants only used approximately $1,029,960 of Pool Participants' funds to trade on-exchange options on futures contracts in three commodity options trading accounts in the name of the Pool over which Shepherd had sole trading authority.

26.     Shepherd opened the Pool's first trading account at a Futures Commission Merchant ("FCM") in or about August 2005. This account traded on-exchange options on futures contracts such as options on E-mini S&P 500 futures contracts on and subject to the rules of the Chicago Mercantile Exchange, Inc., a designated contract market, and options on the ICE U.S. Dollar index futures contract on and subject to the rules of ICE Futures U.S., Inc., a designated contract market, between at least June 2006 and December 2011, and sustained trading losses in excess of $750,000 during that time.

27.     Shepherd opened a second trading account at another FCM in the name of the Pool in or about August 2005 and traded on-exchange options on E-mini S&P 500 futures contracts from September 2011 to March 2013. This account suffered trading losses in excess of $50,000 during that time.

28.     Shepherd opened a third trading account at another FCM in or about December 2011, and, from December 2011 to March 2013, this account traded, among other things, options on E-mini S&P 500 futures contracts and suffered trading losses in excess of $140,000.

29.     As of March 31, 2013, only approximately $51,300 remained in the Pool's trading accounts.

**Defendants Concealed Their Fraud, Commingling and Misappropriation by Issuing False Monthly Statements to Pool Participants**

30.     For every month beginning in or around April 2006, Shepherd forged the Pool's monthly bank statements and provided these forged bank statements to an outside accountant who used them to generate monthly statements for each Pool Participant.

31.     For example, in or around January 2011, Defendants provided to the accountant the Pool's bank statement for the month ending on December 31, 2010 which stated that the balance as of that date was $4,559,876. However, as of that date, the Pool's bank account had a balance of only approximately $59,876.

32.     Defendants' outside accountant then generated each Pool Participant's monthly statement for December 2010 based, in part, on the Pool's falsely inflated bank balance. Defendants then mailed those statements to Pool Participants.

33.     The monthly statements Defendants sent to Pool Participants were false in at least two ways:  (a) they falsely represented the total NAV for the Pool and (b) they falsely represented each Pool Participant's NAV.

34.     For example, in or about January 2013, Defendants mailed or caused to be mailed to each Pool Participant a statement titled "Statement of Operations For the Period Ended December 31, 2012" ("December 31, 2012 Monthly Statement") which stated that the NAV of the Pool as of December 31, 2012 was $6,038,562.

35.     The December 31, 2012 Monthly Statement was false because the NAV of the Pool as of that date was approximately $138,179, consisting of:

      a.     A cash balance of approximately $81,584 at the Pool's bank account;

      b.     An NAV of approximately $2,826 at one of the three commodity options trading accounts in the name of the Pool;

      c.      An NAV of approximately $3,871 at the second commodity options

trading account in the name of the Pool; and

      d.      An NAV of approximately $49,898 in the third commodity options trading

account in the name of the Pool.

36.     The December 31, 2012 Monthly Statement sent to each Pool Participant also

falsely stated the NAV of that Pool Participant's share in the Pool. For example, one Pool

Participant's December 31, 2012 Monthly Statement stated that the NAV of his share was

$378,426. However as of December 31, 2012, the Pool's total NAV was approximately

$138,179.

37.     Defendants knew the bank statements they sent to the outside accountant and the

monthly statements they sent to Pool Participants were false when they were made.

**Defendants Concealed Their Fraud, Commingling and Misappropriation by Issuing
False Year-End Statements to Pool Participants and the NFA**

38.     Defendants hired an auditor to conduct the Pool's annual audit. Beginning in

2006, Shepherd provided the auditor with false contact information at the Pool's bank, to wit, an

address at P.O. Box 597, Southern Pines, North Carolina.

39.     Each year, the auditor sent a request to confirm the Pool's bank account balance

to the P.O. Box provided by Shepherd, which in fact, belonged to Shepherd, not the bank. Upon

receipt of the confirmation request, Shepherd forged a signature to confirm that the Pool's bank

held certain balances in the Pool's account, when in fact, such balances were false. Moreover,

the person whose signature was forged did not work for the bank, but rather was invented by

Shepherd to conceal Defendants' on-going fraud.

40. Shepherd continued to provide false bank confirmations to the auditor during the seven annual audits of the Pool, from the audit for the year ending December 31, 2006 up to and including the audit for the year ending December 31, 2012.

41. The auditor used these false bank confirmations to prepare the audit opinion on the Pool's year-end certified financial statements.

42. Throughout the Relevant Period, Defendants electronically filed the Pool's year-end certified financial statements with the NFA, as required by NFA rules, and caused them to be mailed to Pool Participants. Each of these year-end certified financial statements contained an affirmation signed by Shepherd that stated, in part, "[t]o the best of the knowledge and belief of [Shepherd], the information contained in this Certified Financial Statement ... submitted pursuant to the requirements of the [CFTC] and [NFA], is accurate and complete in all material respects."

43. Each of the seven year-end certified financial statements electronically filed by Defendants with the NFA and mailed by Defendants to Pool Participants for the years ending December 31, 2006 through December 31, 2012 was false.

44. For example, on or about February 15, 2013, Defendants electronically filed with the NFA and mailed to Pool Participants the certified financial statements for the Pool, for the year ending December 31, 2012. Defendants falsely represented that the Pool's assets included "Cash at Bank" equaling $6,041,085. This statement was false since the balance in the Pool's only bank account on December 31, 2012 was approximately $81,584.

45. Defendants knew the year-end certified financial statements they filed with the NFA and mailed to Pool Participants were false when they were made.

**Defendants Filed False Quarterly Reports with the NFA**

46.     Beginning in or about March 2010, Defendants electronically filed pool quarterly reports ("PQRs") with the NFA. Each of the twelve PQRs filed by the Defendants with the NFA between March 2010 and February 2013 was false, and Defendants knew the reports were false when they were made.

47.     For example, on or about October 21, 2010, Defendants filed a PQR for the quarter ending on September 30, 2010 which stated that the Pool's NAV as of September 30, 2010 was $4,946,462 and that the Pool's cash balance at the bank was $4,571,345. However, as of September 30, 2010, the Pool's NAV was less than approximately $315,000 and the balance in the Pool's bank account was approximately $71,845.

**Defendants Mailed False Bank Confirmation to the NFA During the NFA's 2009 Audit**

48.     In or about August 2009, the NFA conducted an examination of the financial statements of the Pool.

49.     During the course of this audit, the NFA required that the Defendants provide the NFA with the Pool's bank name, address and account number so that the NFA could independently verify the Pool's cash balance in the Pool's bank account as of June 30, 2009.

50.     Shepherd informed the NFA that the bank at which the Pool maintained its account had an address of "PO Drawer 597, Southern Pines, NC 28388." This PO drawer was, in fact, a PO Drawer leased by the U.S. Post Office to Shepherd.

51.     The NFA mailed the bank confirmation to that address; Shepherd filled out the bank confirmation himself indicating that the Pool's bank account had a balance of $3,941,516 as of June 30, 2009. Shepherd forged the bank confirmation in the name of a non-existent Customer Service Manager for the bank and mailed the bank confirmation back to the NFA.

52.     The bank confirmation that Shepherd sent to the NFA was false because:

11

a.   the bank's address was a PO drawer controlled by Shepherd and not a true address for the Pool's bank;

b.   The person whose name Shepherd signed is not an employee of the Pool's bank; and

c.   The Pool's bank account balance as of June 30, 2009 was approximately $641,516, not $3,941,516 as represented by Shepherd.

53.   Defendants knew the bank confirmation they sent to the NFA was false when it was created.

## B.   CONCLUSIONS OF LAW

### Jurisdiction and Venue

54.   This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, Regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, Regulation or order thereunder.

55.   Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because the acts and practices in violation of the Act occurred within this District.

### Violations of CEA Section 4c(b) and Regulation 33.10: Options Fraud

56.   By the conduct described in Paragraphs 14 through 53 above, Defendants, in connection with offers to enter into, the entry into, the confirmation of the execution of, and the maintenance of, commodity option transactions, cheated or defrauded or attempted to cheat or

defraud Pool Participants, made or caused to be made to Pool Participants false reports or statements thereof or caused to be entered for Pool Participants false records thereof, and deceived or attempted to deceive Pool Participants by providing Pool Participants with Offering Memos which falsely stated that the Pool's funds would not be commingled and falsely stated the Pool's NAV, by distributing to Pool Participants monthly statements and year-end certified financial statements which falsely stated the Pool's assets and NAV, and by misappropriating Pool Participants' funds, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10.

57.     Shepherd controlled JAS Inc. and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting JAS Inc.'s violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10.  Shepherd is therefore liable for JAS Inc.'s violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10, as a controlling person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

58.     The fraudulent misrepresentations and misappropriation by Shepherd occurred within the scope of his employment or office with JAS Inc.; therefore JAS Inc. is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

**Violations of Section 4o(1)(A) and (B) of the Act:  Fraud by a CPO**

59.     Further, by the conduct described in Paragraphs 14 through 53 above, JAS Inc., by and through Shepherd, and Shepherd individually, were each a CPO, as each of them engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and, in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading in commodity options on or subject to the rules of a contract market.

13

60.     Further, by the conduct described in paragraphs 14 through 53 above, JAS Inc., by and through Shepherd, and Shepherd individually, violated Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B), in that, while acting as a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, Defendants (A) employed any device, scheme, or artifice to defraud any participant or prospective participant, and (B) engaged in any transaction, practice, or course of business which operated as a fraud or deceit upon any participant or prospective participant, as they falsely stated that the Pool's funds would not be commingled and falsely stated the Pool's NAV, distributed to Pool Participants false monthly statements and year-end certified financial statements which falsely stated the Pool's assets and NAV, and misappropriated Pool Participants' funds.

61.     Shepherd controlled JAS Inc. and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting JAS Inc.'s violations of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B). Shepherd is therefore liable for JAS Inc.'s violations of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B), as a controlling person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

62.     The fraudulent misrepresentations and misappropriation by Shepherd occurred within the scope of his employment with JAS Inc.; therefore JAS Inc. is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

**Violations of Section 9(a)(4) of the Act: False Statements to a Futures Association**

63.     During the Relevant Period, NFA, in furtherance of its official duties under the Act, required JAS Inc. to file PQRs and annual financial reports with the NFA to determine whether JAS Inc. was operating within the scope of its registration.

64.     Further, by the conduct described in Paragraphs 14 through 53 above, Defendants willfully concealed material facts in the Pool's PQRs and annual financial reports and made false statements or misrepresentations to the NFA, a futures association designated or registered under the Act acting in furtherance of its official duties under the Act, including but not limited to, falsely stating the Pool's NAV and the Pool's bank account balances, in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

65.     Further, by the conduct described in Paragraphs 14 through 53 above, Defendants fraudulently concealed the Pool's true assets by sending the NFA a forged bank confirmation during an NFA audit of JAS Inc., also in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

66.     The foregoing acts, omissions and misrepresentations and willful concealment to NFA by Shepherd occurred within the scope of his employment with JAS Inc. Therefore, JAS Inc. is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

67.     Shepherd controlled JAS Inc., directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, JAS Inc.'s act or acts in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4); therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Shepherd is also liable for JAS Inc.'s violations of those Sections of the Act.

**Violation of Section 4.20(c) of the Regulations: Commingling Pool Participants' Funds**

68.     Further, by the conduct described in Paragraphs 14 through 53 above, JAS Inc., a CPO, violated Regulation 4.20(c), 17 C.F.R. § 4.20(c), by commingling funds of the Pool, which Defendants operated, with Shepherd's own funds by, among other things, transferring the Pool's funds from the Pool's bank account to Shepherd's own bank account containing Shepherd's own

15

funds and transferring Pool Participants' funds to a bank account in the name of a separate hedge fund operated by Shepherd.

69.     Shepherd controlled JAS Inc., directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, JAS Inc.'s act or acts in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c); therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Shepherd is also liable for JAS Inc.'s violations of Regulation 4.20(c), 17 C.F.R. § 4.20(c).

70.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV. ORDER FOR PERMANENT INJUNCTION

### IT IS HEREBY ORDERED THAT:

71.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

  a.     Offering to enter into, entering into or confirming the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade, as an "option," "privilege," "indemnity," "bid," "offer," "put," "call," "advance guaranty," or "decline guaranty," contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing such transaction under such terms and conditions as the Commission shall prescribe in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012);

b.    In or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction, cheating or defrauding or attempting to cheat or defraud any other person; making or causing to be made to any other person any false report or statement thereof or causing to be entered for any person any false record thereof; and deceiving or attempting to deceive any other person by any means whatsoever, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 33.10, 17 C.F.R. § 33.10;

c.    As a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant, in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B);

d.    Willfully falsifying, concealing or covering up by any trick, scheme, or artifice a material fact, making any false, fictitious or fraudulent statements or representations, or making or using any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry to a registered entity, board of trade, swap data

repository or futures association designated under the Act acting in furtherance of its official duties under the Act, in violation of Section 9(a)(4), 7 U.S.C. § 13(a)(4); and

e.   Commingling the property of any pool that Defendants operate or that Defendants intend to operate with the property of another person, in violation of Section 4.20(c), 17 C.F.R. § 4.20(c).

72.   Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (Supp. IV 2011));

b.   Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2012)) ("commodity options"), swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47), and as further defined by Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2012)), security futures products and/or foreign currency ("forex contracts") (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, §§ 2(c)(2)(B) and 2(c)(2)(C)(i) (Supp. IV 2011)), for their own personal or proprietary account or for any account in which they have a direct or indirect interest;

c.   Having any commodity futures, options on commodity futures, commodity options, swaps, security futures products and/or forex contracts traded on any of their behalf;

18

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, swaps, security futures products and/or forex contracts;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, security futures products and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012), agent or any other officer or employee of any person (as that that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

## V. STATUTORY AND EQUITABLE RELIEF

**RESTITUTION**

76. Defendants, jointly and severally, shall pay restitution in the amount of $8,060,810.43 (eight million sixty thousand eight hundred ten dollars and forty three cents) (the

"Restitution Obligation"), plus post-judgment interest, within ten (10) days of the date of entry of this Order of Final Judgment. Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order of Final Judgment and shall be determined by using the Treasury Bill rate prevailing on the date of the entry of this Order of Final Judgment pursuant to 28 U.S.C. § 1961. To the extent Defendant Shepherd has made or will make payments in satisfaction of the restitution requirements to be imposed in connection with *United States of America v. James Alexander Shepherd*, 3:13-cr-00167-RJC, such payments shall be offset against the Restitution Obligation.

77.      To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' investors, the Court hereby appoints the NFA as Monitor. The Monitor shall collect restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of the Court in performing these services, the NFA shall not be liable for any action or inaction arising from the NFA's appointment as Monitor, other than actions involving fraud.

78.      Defendants shall make Restitution Obligation payments under this Consent Order to the Monitor in the name of **"James A. Shepherd and James A. Shepherd Inc. Restitution Fund"** and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of the Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, IL 60606 under a cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

79.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' pool participants identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature, such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary payments, which the Monitor shall forward to the Commission following the instructions for civil monetary payments set forth in Paragraphs 86 to 89 below.

80.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the NFA deems necessary and appropriate to identify Defendants' pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution wherever located, in order to make partial or total payment toward the Restitution Obligation.

81.     Within thirty (30) days of receiving this Final Judgment, any financial institution, including any FCM, holding funds in the name of **James A. Shepherd, James A. Shepherd Inc.,** or **James A. Shepherd Major Play Option Fund LP** is specifically directed to liquidate and release all funds, whether the funds are held in a single or joint account, or any other capacity, and to convey by wire transfer to an account designated by the Monitor, all funds in these accounts, less any amounts required to cover the financial institutions' outstanding administrative or wire transfer fees. At no time during the liquidation, release, and/or wire

21

transfer of these funds pursuant to this Consent Order shall Defendants be afforded any access to, or be provided with, any funds from these accounts. Defendants and all banks and financial institutions subject to this Consent Order shall cooperate fully and expeditiously with the CFTC and the Monitor in the liquidation, release, and wire transfer of these funds.

82. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' pool participants during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and case number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Square, 1155 21st Street, NW, Washington, DC 20581 and copies to the Deputy Director, Commodity Futures Trading Commission, 140 Broadway, 19th Floor, New York, NY 10005.

83. The amounts payable to each Pool Participant shall not limit the ability of any Pool Participant from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any Pool Participant that exist under state or common law.

84. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant of Defendants who suffered a loss is explicitly made an intended third party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order against Defendants to obtain satisfaction of any portion of the restitution that has not been paid by Defendants, to ensure continued compliance with any provision of this Consent Order and to hold Defendants in contempt for any violation of any provision of this Consent Order.

85.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**CIVIL MONETARY PENALTY**

86.     Defendants shall, jointly and severally, pay a civil monetary penalty in the amount of seven million dollars ($7,000,000), plus post-judgment interest within ten (10) days of the date of entry of this Final Judgment ("CMP Obligation"). Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

87.     Defendants shall each pay this CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables
> DOT/FAA/MMAC/AMZ-341CFTC/CPSC/SEC
> 500 S. MacArthur Blvd. Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

88.     If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of their respective CMP Obligations with a cover letter that identifies Defendants, respectively, by name and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the

cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

89. Partial Satisfaction: Any acceptance by the Commission of partial payment of Defendants' CMP Obligations shall not be deemed a waiver of their respective obligations to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

90. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

(1) Aitan Goelman, Director, Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre, 1155 21st Street, N.W.
Washington, D.C. 20581;

(2) Richard Foelber, Chief, Office of Cooperative Enforcement, Division of
Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre, 1155 21st Street, N.W.
Washington, D.C. 20581;

(3) Manal Sultan, Deputy Director, Division of Enforcement
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005;

and

(4) Elizabeth C. Brennan, Attorney of Record
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005.

Notice to Defendants:

John Keating Wiles, Esq.
Cheshire Parker Schneider & Bryan, PLLC

P.O. Box 1029
Raleigh, NC 27602
Telephone: (919) 833-3114
Facsimile: (919) 832-0739

All such notices to the Commission shall reference the name and docket number of this action.

91.     Change of Address/Phone:  Until such time as either Defendant satisfies in full the Defendants' CMP Obligation as set forth in this Consent Order, each Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

92.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

93.     Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

94.     Waiver:  The failure of any party to this Consent Order to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

95.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this

25

action, including any motion by either Defendant to modify or for relief from the terms of this Consent Order.

96.    Authority: Shepherd hereby warrants that he is the sole and managing member of JAS, Inc. and that this Consent Order has been duly authorized by JAS, Inc. and Shepherd has been duly empowered to sign and submit this Consent Order on behalf of JAS, Inc.

97.    Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under the authority or control of Shepherd and/or JAS Inc., and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Shepherd and/or JAS Inc.

98.    Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

99.    Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief against Defendants.

IT IS SO ORDERED on this ___39___ day of ___August___, 2016.

UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

_____
James A. Shepherd, individually

Date: 7/12/16

_____
James A. Shepherd, as representative of James
A. Shepherd, Inc.

Date: 7/12/16

Approved as to form:

_____
John Keating Wiles, Esq.
Cheshire Parker Schneider & Bryan PLLC
133 Fayetteville Street
P.O. Box 1029
Raleigh, NC 27602
Telephone: (919) 833-3114
Fax: (919) 832-0739
Attorney for Defendants James A. Shepherd
and James A. Shepherd Inc.

ATTORNEYS FOR PLAINTIFF U.S.
COMMODITY FUTURES TRADING
COMMISSION

_____
Elizabeth C. Brennan, Trial Attorney
David Acevedo, Chief Trial Attorney

U.S. Commodity Futures Trading Commission
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005
Telephone: (646) 746-9747
Fax: (646) 746-9940

Date: 8/12/16